JS 44 (Rev. 10/20) - TXND (10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | |
| | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____
Brief description of cause:
_____

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| GEORGE CODY TIPTON AND BRITTANY TIPTON,  Plaintiffs, | § § § |
| v. | § CIVIL ACTION NO. _____ § § |
| HIPPO ANALYTICS, INC. d/b/a HIPPO INSURANCE SERVICES and SPINNAKER INSURANCE COMPANY  Defendants. | § § § § § § |

## PLAINTIFFS' ORIGINAL COMPLAINT

George Cody Tipton and Brittany Tipton ("Plaintiffs") file this Original Complaint against Defendants Hippo Analytics, Inc. d/b/a Hippo Insurance Services ("Hippo") and Spinnaker Insurance Company ("Spinnaker"), and state as follows:

### PARTIES

1. George Cody Tipton and Brittany Tipton are Texas residents who reside in Tarrant County, Texas.

2. Hippo is Delaware corporation with its principal place of business located at 191 Castro Street, Suite B, Mountain View, California 94041. Hippo may be served with process by serving its designated agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

3. Spinnaker is a foreign insurance company organized and existing under the laws of Illinois and authorized to conduct business in the State of Texas. Spinnaker is domiciled in Chicago, Illinois and has its principal place of business located at 1 Pluckemin Way, Suite 102,

Bedminster, New Jersey 07921. Spinnaker may be served with process by serving its designated agent for service of process, Corporation Service Company, CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because the parties are citizens of different states. Plaintiffs are citizens of Texas. Hippo is a citizen of Delaware and California. Spinnaker is a citizen of Illinois and New Jersey. In addition, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Venue is proper in this District because all or a substantial part of the events and acts or omissions giving rise to these claims occurred in this District within the meaning of 28 U.S.C. §1391. In particular, the loss at issue occurred in Tarrant County, Texas.

## FACTUAL BACKGROUND

1. Upon information and belief, Hippo is a managing general agent that partnered with Spinnaker for several years before acquiring Spinnaker in August or September 2020. Hippo markets and procures homeowners policies issued by Spinnaker for residents of Texas, such as Plaintiffs. On its website, Hippo represents that it "[u]ses *advanced technology* to offer coverages for your home with just the right amount of protection, year after year." *About Us*, HIPPO, https://www.hippo.com/about (last visited Jan. 6, 2022) (emphasis added).

2. Plaintiffs initially obtained their Policy through Hippo. In the course of completing their initial application for their Policy on Hippo's website, Plaintiffs provided only their address. They did not provide any additional information about the value of their home, nor did they request specific policy limits.

3. Instead, the policy limits were calculated internally by Hippo and/or Spinnaker, and as set out in more detail below, Plaintiffs' policy was renewed annually for the next two years with the limits increasing incrementally based on internal adjustments made by Defendants.

4. Spinnaker issued Homeowner's Insurance Policy No. HTX-0217720-02, effective November 15, 2020 to November 15, 2021 (the "Policy"), to Plaintiffs, who are both named insureds. The Policy is attached as Exhibit A. The insured location listed on the Policy is Plaintiffs' home located at 3403 Queensbury Way E, Colleyville, Texas 76034 (the "Residence").

5. The Policy contains the following limits of liability for the coverages provided under Section I – Property:

| Policy Coverage | Limit of Liability |
|---|---|
| Coverage A – Dwelling | $420,000 |
| Coverage B – Other Structures | $84,000 |
| Coverage C – Personal Property | $294,000 |
| Coverage D – Loss of Use | $126,000 |

Section I – Property under the Policy insures against direct physical loss to covered property under Coverages A, B, and C, and provides coverage under Coverage D for any necessary increase in living expenses incurred by Plaintiffs so that their household can maintain its normal standard of living in the event of a covered loss that makes their home "not fit to live in."

6. In addition, the Policy contains an Additional Replacement Cost Protection Specified Amount Endorsement ("Additional Replacement Cost Protection Endorsement") that provides an additional amount of insurance up to the percentage of the Coverage A limit of liability described in the Declarations. The Policy's Declarations specify that the percentage for this endorsement is 25% of Coverage A. Since the limit of liability for Coverage A is $420,000, this endorsement provides additional insurance up to $105,000, i.e., 25% of $420,000, if the amount of loss exceeds the dwelling limit.

7. In the Policy, Spinnaker represents that several factors will be taken into consideration when it calculates the limit of liability for Coverage A – Dwelling. Specifically, the Policy states: "The limit of liability for this structure (Coverage A- Dwelling) is based on an estimate of the cost to rebuild your home, including an ***approximate cost for labor and materials in your area***, and specific information that you have provided about your home." (emphasis added).

8. As to the maintenance of policy limits, the Policy contains the following condition:

**Section I – Conditions**

**A. Your Duties to Maintain Policy Limits**

> It is your sole responsibility to propose and then maintain adequate amounts of insurance on your dwelling and personal property. ***We will provide and adjust annually, either up or down, an estimate of the "replacement cost" based upon general factors for your area supplied by appraisal agencies.*** We do not guarantee that the limits quoted, offered, selected or adjusted annually will be sufficient to rebuild your dwelling or replace your personal property. Alterations to your property may result in significant changes in "replacement cost". Rebuilding costs may rise substantially in the event of regional mass disasters. In the event that you do not agree with the limits or annual adjustments we suggest, you may obtain an appraisal or contractor estimate which we will consider, but are not obligated to accept. Higher coverage amounts to which we agree will result in higher premiums. (emphasis added).

The Policy defines the term "replacement cost" to mean "the amount necessary to repair or replace the damaged property with no deduction for depreciation."

9. Accordingly, pursuant to the emphasized language above, Spinnaker has expressly agreed to annually adjust the estimated replacement cost of Plaintiffs' dwelling, i.e., the amount necessary to repair or replace their Residence, based upon information provided by an appraisal agency and based upon the approximate cost for labor and materials in the area where Plaintiffs live.

10. Spinnaker undertook this obligation notwithstanding the language purporting to place "sole" responsibility on Plaintiffs for maintaining adequate amounts of insurance or its statement that it does "not guarantee that the limits quoted, offered, selected or adjusted annually will be sufficient to rebuild your dwelling or replace your personal property."

11. In other words, regardless of the adequacy of the policy limits, Spinnaker affirmatively represented that it would make an annual adjustment based upon information provided by the appraisal agency in Plaintiffs' "area" and based upon approximate costs for labor and materials in Plaintiffs' "area." Since the Residence is located in Tarrant County, Texas, the Tarrant Appraisal District ("TAD") is the relevant appraisal agency that would have supplied the information upon which Spinnaker's annual adjustment would be based.

12. Similar to Spinnaker, Hippo represents in the Policy's Declarations that it will adjust the coverage limits under Plaintiffs' Policy based on estimated changes in rebuilding and replacement costs as emphasized below:

> It is your responsibility to select and maintain adequate amounts of insurance on your dwelling and personal property. ***The coverage limits selected by you will be adjusted annually based on estimated changes in rebuilding and replacement costs***, but the company does not guarantee that the coverage limits shown in these declarations will be sufficient to rebuild your dwelling or replace any other covered property. Please call us or visit us at www.myhippo.com if you would like to change the coverage limits in your policy. (emphasis added).

13. On January 21, 2021, a fire destroyed the Plaintiffs' Residence.

14. Following the fire, Plaintiffs reported the claim to Hippo, which then presumably forwarded the claim to Spinnaker. Representatives from Hippo have been the exclusive point of contact for Plaintiffs throughout the handling of this claim, and as such are agents of Spinnaker.

15. It is undisputed that the fire was a covered loss under the Policy, and Defendants have issued payments to Plaintiffs in the amount of the policy limits under Coverages A and C, as

well as the additional amount of $105,000 in insurance (25% of Coverage A) provided under the Additional Replacement Cost Protection Endorsement.

16. However, after reporting the claim to Hippo, Plaintiffs learned that the $420,000 dwelling limit in the Policy under Coverage A was wholly insufficient to cover the costs of rebuilding or replacing their Residence, even with the additional $105,000 in insurance provided under the Additional Replacement Cost Protection Endorsement.

17. Upon learning this, Plaintiffs asked a Hippo representative how the dwelling limit was calculated, and they were advised that the dwelling limit was calculated annually using internal software.

18. However, a review of the publically available information provided by TAD demonstrates that the dwelling limit of $420,000 calculated by Hippo and/or Spinnaker's internal software bears no resemblance to the home values calculated by TAD. Instead, the dwelling limits in the Policy are significantly lower than the home value assigned by TAD to Plaintiffs' Residence each year.

19. The chart below provides a comparison of the annual adjustments made by Defendants versus the total market value, i.e., the home value, determined by TAD[1]:

| Year | Policy Period | Spinnaker's Adjusted Dwelling Limit | TAD's Total Market Value |
|---|---|---|---|
| 2018 | 2018-2019 | $390,000 | $534,402 |
| 2019 | 2019-2020 | $405,000 | $554,799 |
| 2020 | 2020-2021 | $420,000 | $527,131 |

20. It is obvious from the chart above that the annual adjustments Defendants made to the Policy's dwelling limits have never had been "based upon general factors for your area supplied by appraisal agencies."

---

[1] *Account #: 06304133*, TARRANT APPRAISAL DISTRICT, https://www.tad.org/property/06304133/ (last visited Jan. 20, 2022). A copy of this webpage is attached as Exhibit B.

21. In addition, the contract price to rebuild Plaintiffs' Residence is more than $800,000, which demonstrates that the Policy's $420,000 dwelling limit does not reflect an "approximate cost for labor and materials in [Plaintiffs'] 'area,'" but rather includes only about 50% of those costs.

22. Further, following the loss, Plaintiffs contacted Hippo to increase their policy limits to $1,000,000. During that call and without requiring any additional information, Hippo immediately offered to increase the dwelling limits by more than $200,000 but advised that the increase would not apply retroactively to the loss. Hippo's immediate offer to increase the dwelling limit by more than $200,000 without any additional supporting documentation less than a year after the policy was issued demonstrates that Defendants' method of calculating policy limits is haphazard and indicates that the calculation is neither based on any actual changes in the rebuilding and replacement costs in the area where Plaintiffs live nor related to the home value calculated by TAD. Moreover, the arbitrary amount of the increase suggests that the software Hippo and/or Spinnaker is using is faulty.

## CAUSES OF ACTION

23. Each of the foregoing paragraphs is incorporated by reference in the following causes of action:

### I.   BREACH OF CONTRACT

24. Spinnaker, through its agent Hippo, contracted to provide Plaintiffs the Policy.

25. Within the express terms of the Policy, Spinnaker owed a duty to provide a dwelling limit "based on an estimate of the cost to rebuild [Plaintiffs'] home, including ***an approximate cost for labor and materials in [Plaintiffs'] area*** . . . ." (emphasis added). Further, Spinnaker

agreed to "adjust annually, either up or down, an estimate of the 'replacement cost' ***based upon general factors for your area supplied by appraisal agencies***." (emphasis added).

26. Spinnaker breached its duty to Plaintiffs by not calculating the replacement cost value of Plaintiffs' Residence based upon information supplied by TAD and by failing to take into account the approximate costs for labor and materials in Plaintiffs' area.

27. Spinnaker's attempt to disclaim liability for the adequacy of the dwelling limit by purporting to place "sole" responsibility on Plaintiffs does not negate the fact that Spinnaker affirmatively undertook its own obligations related to the annual adjustment of the Policy's dwelling limit regardless of any action or inaction by Plaintiffs.

28. Spinnaker's breach of its affirmative obligation to annually adjust the dwelling limit in accordance with the Policy provisions above was both the proximate, and actual cause of Plaintiffs' Residence being severely undervalued and underinsured.

29. Accordingly, Spinnaker's conduct constitutes a breach of contract with Plaintiffs.

30. As a result of Spinnaker's breach, Plaintiffs are entitled to recover the amount of their actual damages, plus court costs, reasonable and necessary attorneys' fees, and any other relief the Court deems proper from Spinnaker.

## II.    VIOLATIONS OF THE TEXAS INSURANCE CODE

31. As set out in the paragraphs above, Defendants made affirmative written representations to Plaintiffs as to how they would annually adjust the Policy's dwelling limit, regardless of Plaintiffs' action or inaction related to the policy limits. Specifically, Spinnaker represented to Plaintiffs that the Policy had a policy limit under Coverage A – Dwelling "based upon an estimate of the cost to rebuild your home, including an approximate cost for labor and materials in your area, and specific information that you have provided about your home." Hippo

made a similar representation to Plaintiffs, stating that the coverage limits would be "adjusted annually based on estimated changes in rebuilding and replacement costs." Additionally, Spinnaker expressly represented that it would "provide and adjust annually, either up or down, an estimate of the 'replacement cost' based upon general factors for your area supplied by appraisal agencies."

32.  However, following the loss, Plaintiffs learned that Defendants failed to make the annual adjustment of the dwelling limit in accordance with the terms of the Policy and their representations, and Defendants failed to inform Plaintiffs of that failure.

33.  Instead, Defendants made the annual adjustment to the Policy's dwelling limit using internal software, which increased the dwelling limit from $405,000 during the 2019-2020 policy period to $420,000 for the 2020-2021 policy in effect when the fire occurred.

34.  The annual adjustment made by Defendants does not reflect and has never reflected the market value of the Residence calculated by TAD, and the $420,000 dwelling limit is about half of the actual cost for the labor and materials necessary to rebuild the Residence in the area where the Residence is located.

35.  As a result, Defendants' have made an untrue statement of material fact; failed to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made; made a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; and failed to disclose a matter required by law to be disclosed, in violation of § 541.061(1), (2), (3), and (5) of the Texas Insurance Code. Violations of § 541.061 are actionable under § 541.151 of the Texas Insurance Code.

36. As a result of Defendants' deceptive acts and practices as set out in paragraphs 30-34, Plaintiffs are entitled to recover the amount of their actual damages, plus court costs, reasonable and necessary attorneys' fees, and any other relief the Court deems proper from Defendants. Tex. Ins. Code § 541.152(a).

37. Defendants knowingly committed the acts complained of. As a result, Plaintiffs are entitled to treble damages pursuant to Texas Insurance Code § 541.152(b).

### III.  VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES–CONSUMER PROTECTION ACT

38. As set out in the paragraphs above, Defendants affirmatively represented to Plaintiffs in writing that they would adjust the Policy's dwelling limit annually based on the approximate costs for labor and materials in Plaintiffs' area, estimated changes in rebuilding and replacement costs, and information supplied by TAD.

39. However, Defendants failed to make the annual adjustment of the dwelling limit in accordance with the terms of the Policy and their representations, and Defendants failed to inform Plaintiffs of that failure.

**Laundry List**

40. Defendants' conduct constitutes a representation that services have characteristics, uses, benefits, or quantities that they do not have; a representation that an agreement confers or involves rights, remedies, or obligations that it does not have or involve; and a failure to disclose information concerning services that was known at the time of the transaction if the failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered had the information been disclosed, in violation of § 17.46(b)(5), (12), and (24) of the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA").

41. Plaintiffs relied on Defendants' representations and other conduct to their detriment. Plaintiffs' reliance on Defendants' representations was a producing cause of Plaintiffs' damages.

42. Violations of § 17.46(b) of the DTPA are actionable under § 17.50(a)(1) of the DTPA. Plaintiffs are entitled to recover their economic and mental anguish damages from Defendants, along with their reasonable and necessary attorneys' fees and expenses, court costs, and any other relief that the Court deems proper. Tex. Bus. & Com. Code § 17.50(b), (d).

43. Defendants knowingly committed the acts complained of. As a result, Plaintiffs are entitled to treble economic damages pursuant to § 17.50(b)(1) of the DTPA.

**Unconscionable Action or Course of Action**

44. Defendants' conduct constitutes an act or practice which, to Plaintiffs' detriment, takes advantage of Plaintiffs' lack of knowledge, ability, experience or capacity to a grossly unfair degree.

45. Those unconscionable actions or courses of action were a producing cause of Plaintiffs' damages.

46. Such unconscionable actions or courses of action are actionable under § 17.50(a)(3) of the DTPA. Plaintiffs are entitled to recover their economic and mental anguish damages from Defendants, along with their reasonable and necessary attorneys' fees and expenses, court costs, and any other relief that t the Court deems proper. Tex. Bus. & Com. Code § 17.50(b), (d).

47. Defendants knowingly committed the acts complained of. As a result, Plaintiffs are entitled to treble economic damages pursuant to § 17.50(b)(1) of the DTPA.

**Violations of the Texas Insurance Code**

48. As discussed above, Defendants' acts and/or omissions constitute violations of Chapter 541 of the Texas Insurance Code.

49. Those violations were a producing cause of Plaintiffs' damages.

50. Violations of Chapter 541 of the Texas Insurance Code are actionable under § 17.50(a)(4) of the DTPA. Plaintiffs are entitled to recover their economic and mental anguish damages from Defendants, along with their reasonable and necessary attorneys' fees and expenses, court costs, and any other relief that the Court deems proper. Tex. Bus. & Com. Code § 17.50(b), (d).

51. Defendants knowingly committed the acts complained of. As a result, Plaintiffs are entitled to treble economic damages pursuant to § 17.50(b)(1) of the DTPA.

IV.    **NEGLIGENT MISREPRESENTATION**

52. As set out in the paragraphs above, Defendants affirmatively represented to Plaintiffs in writing that they would adjust the Policy's dwelling limit annually based on the approximate costs for labor and materials in Plaintiffs' area, estimated changes in rebuilding and replacement costs, and information supplied by TAD.

53. Defendants made these representations in the course of their business as the agent and insurer for Plaintiffs and for Plaintiffs' guidance in accepting and renewing coverage under the Policy.

54. However, following the loss, Plaintiffs learned that Defendants failed to make the annual adjustment of the dwelling limit in accordance with their representations and failed to inform Plaintiffs of that failure. Instead, Plaintiffs learned that Defendants made the annual adjustment to the dwelling limit using internal software.

55. Therefore, Defendants' representations were a misstatement of fact because, as set out above, the dwelling limit in the Policy does not reflect and has never reflected the market value of the Residence calculated by TAD. Moreover, the dwelling limit in the Policy is well below the costs of labor and materials in the area where the Residence is located.

56. The discrepancies between the TAD market value for the Residence and Plaintiffs' contract price to rebuild the Residence following the fire as compared to the $420,000 dwelling limit establishes that Defendants did not use reasonable care in calculating the annual adjustment to the dwelling limit or in communicating to Plaintiffs how that adjustment was made.

57. Plaintiffs justifiably relied on Defendants' representations that the Policy's dwelling limit would be adjusted annually in accordance with the Policy language set out above. As a result of Defendants' misrepresentations regarding the annual adjustments to the dwelling limit, Plaintiffs did not object to the limits or annual adjustments suggested by Defendants. Rather, Plaintiffs, relying on the insurance knowledge and experience of Defendants, annually renewed their Policy with the limits calculated by Defendants.

58. Defendants' attempt to disclaim liability related to the adequacy of the dwelling limit by purporting to place "responsibility" on Plaintiffs does not negate the fact that Defendants made affirmative representations as to how they would annually adjust the Policy's dwelling limit regardless of any action or inaction by Plaintiffs.

59. Defendants' misrepresentations as to how they would annually adjust the Policy's dwelling limit proximately caused injury to Plaintiffs, which resulted in actual damages.

60. As a result, Plaintiffs are entitled to recover the amount of their actual damages, plus court costs, exemplary damages, and any other relief the Court deems proper from Defendants.

## V.    ATTORNEYS' FEES

61.    Plaintiffs retained the services of the law firm of Cokinos | Young and have agreed to pay Cokinos | Young a reasonable fee for its services necessarily rendered and to be rendered in this action. Plaintiffs are entitled to an award of their reasonable and necessary fees in an amount to be established at trial pursuant to §§ 38.001, *et seq.* of the Texas Civil Practice & Remedies Code (Breach of Contract), § 541.152 of the Texas Insurance Code (Unfair Claims Settlement Practices), and § 17.50 of the Texas Business & Commerce Code (DTPA).

## JURY DEMAND

62.    Plaintiffs assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## PRAYER

WHEREFORE, Plaintiffs respectfully pray for the following relief:

(1)    Judgment that Spinnaker breached its insurance contract with Plaintiffs and that Plaintiffs are entitled to their damages as a result of this breach of contract;

(2)    Judgment that Defendants' conduct constitutes violations of Chapter 541 of the Texas Insurance Code and that Plaintiffs are entitled to recover statutory damages, including treble damages under Chapter 541 of the Texas Insurance Code;

(3)    Or, alternatively, judgement that Defendants' conduct constitutes violations of the DTPA and that Plaintiffs are entitled to recover statutory damages, including treble damages under § 17.50 of the Texas Business & Commerce Code;

(4)    Or, alternatively, judgment that Defendants made negligent misrepresentations to Plaintiffs, which Plaintiffs detrimentally relied upon and which were a producing cause of their damages, and that Plaintiffs are entitled to recover their actual

damages, including exemplary damages, as a result of Defendants' misrepresentations;

(5) Judgment that Plaintiffs are entitled to recover their costs, expenses, and attorneys' fees incurred in pursuing this action;

(6) Judgement awarding Plaintiffs' pre-judgment and post-judgment interest as allowed by law; and

(7) For such other and further relief to which Plaintiffs are justly entitled, in law or in equity.

Respectfully submitted,

COKINOS | YOUNG

By: */s/ Travis M. Brown*
Travis M. Brown
State Bar No. 24061890
Amy N. Rauch
State Bar No. 24091233
One Galleria Office Tower
13355 Noel Road, Suite 1375
Dallas, TX 75240
Telephone:    (817) 635-3600
Facsimile:    (817) 635-3633
Email: tbrown@cokinoslaw.com
arauch@cokinoslaw.com